*Decision will be entered under Rule 50.*

MILO R. MALTBIE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 43648, 48344.   Promulgated November 16, 1934.

*Leonard M. Wallstein, Esq.*, for the petitioner.
*L. W. Creason, Esq.*, for the respondent.

618

## OPINION.

MATTHEWS: Petitioner seeks exemption from Federal tax of income received by him as a public utility consultant from various states and municipalities in the years in question. He does not claim to have been an officer, but does contend that the facts show him to have been an employee, that he was employed in the performance of essential governmental functions, and that a tax on his income would be a direct interference with the exercise of these functions by the several states and cities involved.

The petitioner is a man well trained as an expert in public utility matters, has had a large experience in such matters, and is a high authority in the field. His testimony was full, exact, and candidly given. He has served as a public official and was at the time of the hearing chairman of the New York Public Service Commission. He was able, consequently, to appreciate the attitude of mind of the hiring state official as well as that of the hired expert. Few cities, he testified, not even the largest like New York and Chicago, are able to maintain permanent staffs adequate to cope with the work arising out of rate regulation proceedings and franchise matters. One reason is that rate cases arise irregularly and franchise grants at long intervals, around twenty years. The mayor, corporation counsel, or other city official, or the public service commission, is accustomed, therefore, to augment its staff on such occasions, to deal with the problem in hand. Often the work that may be done is strictly limited, as in the New Hampshire case here, by the amount of the legislative grant, and the officials in charge must see that the money spent will go as far as possible.

There are various methods of compensation used in hiring the experts needed. Some are hired on a contractual basis to do a certain piece of work for a fixed sum, and often, where the case is concluded before all the work planned has been finished, a certain minimum sum is guaranteed. The *per diem* basis is the method most frequently used by public utilities officials, since it insures elasticity in the conduct of investigations and does not require work which the corporation counsel has initiated but has since decided to abandon, to be completed and paid for. On the *per diem* basis only work actually wanted is done and the employment is terminable at the will of the commission or city.

Petitioner took no oath of office, gave no bond, held no statutorily defined position with incidents of tenure, and had no fixed salary. He was hired, or " employed ", by the state public service commissions of New Hampshire and Pennsylvania, for the investigation of public utility rates; by the cities of Lexington, Kentucky, and Chicago, Illinois, in connection with the granting of new franchises to public utility companies; and by various cities in New York, including New York City, for investigations arising out of court litigation and other proceedings regulatory of public utilities. Petitioner ordinarily entered into a very simple and elastic form of agreement and the terms of his employment were almost identical in each instance. Petitioner wrote a letter to the city or state official in charge of the matter to be investigated and informed him that he, petitioner, would work for $100 a day, plus necessary expenses, and that his staff, including engineers, accountants, and routine assistants, would also work for so much a day, generally much less than petitioner got. The contract was to be terminable at will of the officer, and all investigations were to be under his direction. This agreement was generally accepted by letter, or endorsement on the offering letter, and petitioner's work proceeded. Sometimes the contract was even more informal, being simply an oral understanding. All of petitioner's work here in question was done on a *per diem* basis. Petitioner's counsel laid great stress on the fact that petitioner received more or less detailed directions from the corporation counsel or the public service commission in each instance, as to the institution, continuance, abandonment, or completion of any particular line of investigation. There is no doubt on the record that the work of petitioner and his staff was wholly under the commission or city officer in charge, subjected, that is, as much as that of any expert employee can reasonably be, to supervision. Petitioner was expected to make reports on his investigations, to comb the record in court or commission hearings and analyze the testimony, and to assist by giving testimony himself or by cross-examination. He did all these things.

This, in substance, was the nature and scope of petitioner's employment. He used his own staff all the time. He throughout maintained his own office, did work for others than public service commissions or cities, and received income from such work. That income is not claimed here as exempt, but the fact goes to show petitioner's methods. All his staff were paid through him, and sometimes the city's employees also, when the city was anxious to keep tab on particular project expenditures. Finally, he was simultaneously working for two state public utility commissions and about a dozen municipalities.

The question is, Was petitioner in such circumstances a state or city employee? In no case did he make any final decision as to the rate to be applied. This was done by the city officer or by the commission. In only one, the Lexington, Kentucky, franchise case, was he called upon to establish such a rate. In that case he was drafting a new franchise, and the positive formulation of policy on the basis of his investigations was necessary to complete the work assigned him. He was obviously a technical expert of a high order, whose professional knowledge and opinion were valuable and for which various cities were willing to pay well. Does this make him an " employee " of a state or a political subdivision thereof, within even the vague contours of that word, for purposes of Federal taxation? We think not.

No useful purpose would be served by an extended review of the numerous cases dealing with this problem. The Supreme Court has spoken in *Metcalf & Eddy* v. *Mitchell*, 269 U.S. 514, the inferior Federal courts and this Board in many other cases. " Employee " is not susceptible of exact definition and can be interpreted intelligently only by keeping in mind the underlying reason for the exemption. The line must be drawn in each case, therefore, according to the peculiar circumstances present. The situation here is so like that in the *Metcalf* case that a recital of the facts of that case is pertinent:

All of the items of income were received by the taxpayers as compensation for their services as consulting engineers under contracts with states or municipalities, or water or sewage districts created by state statute. In each case the service was rendered in connection with a particular project for water supply or sewage disposal, and the compensation was paid in some instances on an annual basis, in others on a monthly or daily basis, and in still others on the basis of a gross sum for the whole service.

The Supreme Court held these engineers neither officers nor employees, but independent contractors. Touching on the question of Federal interference with state governmental functions by imposing on these engineers an income tax, the Court said:

And as was said in *Fidelity & Deposit Company* v. *Pennsylvania*, supra, in holding valid a state tax on premiums collected by bonding insurance companies on surety bonds required by United States officials:

"But mere contracts between private corporations and the United States do not necessarily render the former essential government agencies and confer freedom from state control."

These statements we deem to be equally applicable to private citizens engaged in the general practice of a profession or the conduct of a business in the course of which they enter into contracts with government from which they derive a profit. * * *

The petitioner here was a "public utility consultant" who performed all his services for state subdivisions on the basis of *per diem* contracts for himself and his staff, which often numbered a score or more experts and routine assistants. We can not find any satisfactory basis of distinction between this and the *Metcalf* case. Certainly a technical expert temporarily employed by a state does not thereby clothe himself with state immunity.

In *Lucas* v. *Reed*, 281 U. S. 699, the Supreme Court reversed the Circuit Court, 34 Fed. (2d) 263, in a per curiam decision, on the authority of the *Metcalf* case. The Attorney General of Pennsylvania, under statutory authority to "employ" additional counsel to aid the state in the Frick inheritance tax case, hired Reed. The collection of a state's revenue and the maintenance of its constitutional authority to levy and collect taxes is unquestionably a governmental function, but Reed's relation to the state government was deemed too remote to affect materially this vital interest of a state. See also *Lucas* v. *Howard*, 280 U. S. 526, the case of an attorney hired by a city to conduct cases involving railroad grade crossings, and the like. A more recent case following the *Reed* case is *Commissioner* v. *Murphy*, 70 Fed. (2d) 790, in which the Circuit Court reversed this Board; certiorari denied, 293 U. S. 596, and held taxable the fee paid a lawyer hired by the State of New York as "deputy attorney general" to defend its interests in the Cayuga Indians case before the American-British Arbitral Tribunal. Cf. *Edgar N. Finn*, 31 B. T. A. 439.

In the brief filed on behalf of petitioner it is strongly urged that the instant case is in many respects upon all fours with the case of *Donald R. Richberg*, Docket No. 38723, in which case this Board rendered an unreported decision dated December 17, 1932. To state the facts of that case will suffice to show its variance. We said:

Petitioner herein was employed in an official position by the City of Chicago during the taxable years in controversy, under and by virtue of an Ordinance enacted May 27, 1918, creating the office of "Special Counsel for the City of Chicago in Gas Matters". * * *

The duties of the petitioner herein were prescribed in Section 2 of the aforesaid Ordinance and constituted work of a permanent and continuing nature

and character involving a representation of the City of Chicago in all legal proceedings then pending between the City of Chicago and the People's Gas Light & Coke Company, the sole manufacturer and distributor of gas in the City of Chicago and extended to representation "in charge of the City's interests" with regard to all gas matters "past, present and future rates, standards or service for the supply of gas in the City of Chicago."

We held the petitioner therein to be an officer of the city of Chicago and decided that the income derived by him from such office was tax-exempt. The differences between the two cases are apparent and we should not refer to them here except for the petitioner's insistence on their similarity. The prescribed duties, the permanence and continuity of the petitioner's position in the *Richberg* case, his representative character, all distinguish that case.

We do not regard the petitioner's admission in 1931 to the benefits of the New York State Employees' Retirement System as in any way determinative of the issue presented herein, although we have considered it as evidence. The retirement of officers and employees under the civil service is provided for by articles 4 and 5 of the Civil Service Law of New York, being ch. 741, Laws 1920, and ch. 591, Laws 1922, with subsequent amendments in 1932. We find nothing in the provisions of this law which would indicate that the petitioner was entitled to membership in the Employees' Retirement System by reason of the service he rendered to municipalities of the state during the taxable years involved herein. It was in 1931 that he applied for and was admitted to membership and at that time he was Chairman of the Public Service Commission of New York. He was, therefore, engaged in state service, which is defined in subdivision 8 of section 50 of article 4 of the Civil Service Law as "service, whether appointive or elective, as an official, clerk, or employee of the state of New York, or municipality participating in the system." The fact that he was permitted to, and did, pay to the state comptroller a percentage of the compensation received by him in prior years for services rendered to certain municipalities in the state, in order to receive prior service credit, does not furnish any basis for holding that he was an employee of the state of New York, or a political subdivision thereof, during those prior years.

After a careful consideration of all the evidence introduced herein we are of the opinion that the petitioner is not entitled to exemption from Federal income tax on account of the compensation received by him for services rendered to the several state public service commissions and municipalities, and we hold that such compensation is includable in his gross income for the taxable years.

No question as to the amount of income involved is raised.

*Judgment will be entered for the respondent.*